# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-343 consolidated with 20-344


**SUCCESSION OF ETHEL FAYE BROWN BLACKWELL**

**Consolidated with**

**SUCCESSION OF FRED BLACKWELL**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 54801 C/W 55015
HONORABLE SHARON DARVILLE WILSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Candyce G. Perret, Judges.


**AFFIRMED.**

**B. Thomas Shea**
**Tom Shea Family Law, L.L.C**
**One Lakeshore Drive, Suite 1720**
**Lake Charles, LA   70629**
**(337) 564-4148**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
       **Succession of Ethel Faye Brown Blackwell**

**Wilford D. Carter**
**1025 Mill Street**
**Lake Charles, LA   70601**
**(337) 564-6990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
       **Succession of Fred Blackwell**

**Annette Fuller Roach**
**Roach & Roach, APLC**
**Post Office Box 1747**
**Lake Charles, LA   70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
       **Succession of Fred Blackwell**

**PERRET, Judge.**

In these consolidated succession cases, appellants, the heirs to the Succession of Ethel Faye Brown Blackwell (hereinafter "Succession of Ethel"), appeal a November 6, 2019 judgment in favor of the Succession of Fred Blackwell (hereinafter "Succession of Fred") and against the Succession of Ethel in the amount of $302,577.44, which represents $201,580.44 awarded for the improper distribution of proceeds by the Succession of Ethel; $142,500.00 rent due by the Succession of Ethel for the use of the corporate office; $28,500.00 for the rental value of the property situated at 711 Kingsley Street, Lake Charles, La; $62,797.00 for reimbursement of attorney fees, less $133,000.00 that the trial court ordered to credit the Succession of Ethel. Additionally, the Succession of Ethel appeals the November 6, 2019 judgment that ordered: (1) several legatees be put into possession of immovable properties that were listed in Ethel Faye Brown Blackwell's will; (2) all community property belonging to the Succession of Ethel and Succession of Fred be divided one-half (1/2) to the heirs of Ethel and one-half (1/2) to the heirs of Fred Blackwell; (3) the sale of the community property FM radio station KZWA 104.9 with the proceeds to be divided between the two successions; (4) attorney Corey Rubin to be the administrator for the Succession of Ethel; (5) Mr. Rubin to oversee the operations of B&C Broadcasting, Inc., and to operate "KZWA Radio Station FM 104.9 and to give a full report to the court as necessary until the station can be sold;" and (6) Anthony Bartie to be appointed operations officer and manager in order to oversee the daily operations of FM Radio Station KZWA 104.9.

For the following reasons, we find no manifest error in the trial court's November 6, 2019 judgment and affirm.

**FACTS AND PROCEDURAL HISTORY:**

Fred Blackwell died on March 22, 2003, leaving Ethel Faye Brown Blackwell as his surviving widow. Fred and Ethel did not have any children together; however, Fred had two daughters from his first marriage, Myrna B. Moore and Norma Jean Burns. Twelve years later, Ethel died on January 21, 2015. Ethel's sole heirs are her siblings: Farris Brown, Robert L. Brown, Brenda Brown, Jackie Lynn Brown, Roxie Brown Smith, Frankie C. Brown, Robert Ulysses Brown, Harold G. Brown, Don G. Brown, Jerry G. Brown, and Jaquese Brown.

Ethel's brother, Jackie Lynn Brown, opened her succession on January 22, 2015, and is serving as the administrator of her estate. Thereafter, Fred's daughter, Ms. Moore, opened his succession on April 2, 2015, and is serving as the administratrix of his estate.

On June 2, 2015, the trial court granted Ms. Moore's Motion to Consolidate Succession Proceedings; however, on June 17, 2016, the Louisiana Supreme Court vacated the order consolidating the two succession proceedings due to procedural defects. Thereafter, on December 28, 2016, Ms. Moore and Ms. Burns filed a Petition for Intervention in the Succession of Ethel, which was granted on March 8, 2017. At that time, the trial court also declared that Fred's Last Will and Testament was null and void for lack of an attestation clause.

On February 1, 2019, Ms. Moore filed a Petition to Recover Succession Property and Motion for Contempt against the following defendants: (1) the Succession of Ethel; (2) B&C Broadcasting (Partnership), B&C Broadcasting, Inc. (Limited Partnership), B&C Broadcasting, Ltd., KZWA 104.9 FM Radio Station, and MLK Coalition; (3) Jackie Brown; and (4) Jacques Brown. The petition alleged the following pertinent allegations:

2

5.

KZWA 104.9 FM Radio Station is located and operated on property owned by [Ethel] and Fred Blackwell, situated at municipal address 305 Enterprise Blvd., Lake Charles, Louisiana where the Blackwell's constructed several brick buildings for the purpose of operating the radio station.

6.

Mr. Fred Blackwell died [o]n March 22, 2003 and at his death his surviving spouse received the usufruct of all of the community property existing between them, including, but not limited to, the radio station and the property situated at 305 Enterprise Blvd., Lake Charles, Louisiana. However, at the time of Ethel Faye Brown Blackwell's death on January 21, 2015, the usufruct she had over the property terminated. Myrna B. Moore and Norma Jean Burns are Mr. Blackwell's children and sole heirs; and, as such, became entitled to the possession of all of the property belonging to his estate, including, but not limited to, the radio station and the property situated at 305 Enterprise Blvd., Lake Charles, Louisiana. Mr. Fred Blackwell's succession was opened on August 15, 2016 and petitioner Myrna B. Moore was appointed as administrator of his succession.

7.

The Fred Blackwell succession has not received any rent for the use of the buildings that defendants are occupying since the death of Ethel Faye Brown Blackwell, and they have not received any proceeds from the operation of the radio station. At all material times since Mr. Blackwell's death, the station was operated by [Ethel] and, after her death, by Jackie Brown as the administrator of the Succession of Ethel Faye Brown Blackwell.

8.

Since the defendants have been operating the radio station on property belonging to the succession of Fred Blackwell without rent, the defendants are guilty of unjust enrichment under LSA-C.C. Art. 2055. Accordingly, petitioner desires that this court grant petitioner damages in an amount to be determined at the hearing of this cause for the unjust enrichment of the defendants in the use of petitioner's property without petitioner's consent and without rent payments.

9.

Based on information and belief, the radio station has acquired profits over $200,000.00 annually since the death of Ethel Faye Brown Blackwell and is indebted unto the succession of Fred Blackwell for one-half of those profits since the death of Ethel Faye Brown Blackwell, in the amount of Four Hundred Thousand and NO/00

3

($400,000.00) Dollars, or an amount to be determined by the trier of fact.

10.

In her Last Will and Testament dated April 23, 1984, Ethel Faye Brown Blackwell bequeathed to Norma Jean Burns and Myrna Rose Byrd (aka Myrna Moore) the ownership of the property bearing municipal address 711 Kingsley Street, Lake Charles, Louisiana. Jackie Brown, as administrator of the Succession of Ethel Faye Brown Blackwell, has been in possession of this property. Myrna Moore and Norman Jean Burns should be placed in possession of this property as well as any rent generated from the operation of the station since the death of Ethel Faye Brown Blackwell on January 25, 2015.

11.

Jackie Brown an[d] Jacques Brown [have] been operating KZWA 104.9 FM RADIO STATION incompetently, fraudulently, and without regard for lawful court order or fair distribution of proceeds with all owners. Based on information and belief, if the radio station had been effectively operated it would have generated more profits for the owners. Plaintiffs desire that the court appoint a person to operate KZWA 104.9 FM RADIO STATION until further orders of the court and to determine the realistic debts, profits, assets, liabilities and value of the radio station. Further, the court should order that the administrator have access to all of the radio station's bookkeeping and account records, including, but not limited to, all bank statements, sales agreements, bills, accounts receivables and accounts payable ledgers to determine the annual profit and value of KZWA 104.9 FM RADIO STATION. Further, an appraisal should be done to determine the real value of the property and the fair market value of the rent.

12.

Moreover, the radio station is indebted to the Succession of Fred Blackwell for one of all profits generated from advertising agreements and from the operation of the station. The proceeds are not being adequately used for the development and protection of resources of the radio station.

13.

Plaintiff alleges that it is in the best interest of all owners, that the radio station be sold, the debts be paid, and the balance distributed amongst all owners. Plaintiff has been in contact with persons who are interested in purchasing the radio station for what appears to be a reasonable price. Plaintiffs desire that this court set a date for a hearing for the purpose of determining whether the station should be sold and the price therefor.

14.

4

Plaintiffs recommend Mr. Rob Neal be appointed chief administrative officer of KZWA 104.9 FM RADIO STATION with all access described in Paragraph 9 above with authority to hire bookkeepers, accountants and such other persons to adequately operate the station, pay the bills, and distribute profits to the owners.

15.

Mr. Rob Neal, who is the owner and Executive Director of 105.3 FM WQID radio station and President and Chief Executive Officer of The International Black Broadcasters Association is qualified to be appointed chief administrative officer of KZWA 104.9 FM Radio Station.

A trial on these issues was held on October 1, 2, and 4, 2019. According to the October 21, 2019 minutes of court, the trial judge ruled from the bench stating, in pertinent part:

The Court notes for the record that [Fred] died intestate, without a Will[], and renders this as its final judgment.

At this time, the Court directs that the special requests made by [Ethel] be followed as stated in her Wil[l] and that the following persons be put into possession of the Special Bequest given to them by [Ethel] as follows:

Ferris Brown, Robert L. Brown and Brenda Brown -- property located at 2321 Elaine Street, Lake Charles, Louisiana;

Jackie Lynn Brown and Roxie Brown Smith -- property located at 2319 Elaine Street, Lake Charles, Louisiana;

Frankie C. Brown and Robert Ulysses Brown -- property located at 2325 Elaine Street, Lake Charles, Louisiana;

Harold G. Brown -- property located at 710 Kingsley Street, Lake Charles, Louisiana;

Don G. Brown -- property located at 709 Kingsley Street, Lake Charles, Louisiana;

Jerry G. Brown -- property located at 708 Kingsley Street, Lake Charles, Louisiana;

Jaquese Brown -- property located at 714 Kingsley Street, Lake Charles, Louisiana;

Norma Jean Burns and Myrna Rose Byrd (now known as Myrna B Moore) -- property located at 711 Kingsley Street, Lake Charles, Louisiana.

. . . Thereafter, the Court orders the transfer of the properties as bequeathed by [Ethel], subject to liens by the SBA.

Further, the Court finds that Mr. and Mrs. Blackwell lived in "community" and that based on a stipulation by the Parties, the properties bequeathed by [Ethel], according to public records, are the separate property of [Ethel] because [Fred] renounced, through active donation, any claim or interest that he may have had in those properties. Additionally, the Court finds that based on the Detailed Descriptive List filed in both Successions, that furnishings located at 2321 Elaine Street are community property with an estimated value of $14,500. The Court makes a finding that those movables are the one-half (1/2) property of the heirs of Ethel Faye Brown Blackwell and one-half (1/2) property of the heirs of Fred Blackwell. The Court also finds that the property located at 305 Enterprise Boulevard and listed on the Detailed Descriptive List as "Boston Street," is community property, divided equally, with one-half (1/2) belonging to the Succession of [Ethel] and one-half (1/2) belonging to the Succession to [Fred]. The Court further notes for the record that the Detailed Descriptive List mentioned that small business loans taken out by [Ethel] would have been liabilities owed by [Fred]. The Court finds that this cannot be a justified debt of [Fred] because the loans were taken out after [Fred's] death and therefore cannot be debts of his Succession. The Court notes the only remaining debt listed for [Fred] on the Detailed Descriptive List is his two-percent (2%) interest in B&C Broadcasting. The Court finds this to be an error as the Blackwells lived in "community". Therefore, the Court finds that the ownership of B&C Broadcasting is fifty-percent (50%) Fred Blackwell and fifty-percent (50%) Ethel Faye Brown Blackwell.

The Court now[] takes up the requests of Myrna Moore, Succession Administratrix.

1)      Appoint an Administrator to oversee the Succession. The Court notes for the record that conversations were held in Chambers with Counsel regarding same. At this time, the Court appoints attorney Corey Rubin as Administrator. . . .The Court appoints Mr. Rubin to oversee the daily operations of B&C Broadcasting, Inc., operating as K-Z-W-A and to provide the Court with a full report until the radio station can be sold. Additionally, the Court appoints Anthony Bartie as manager of the daily operations of the radio station and Mr. Bartie is to report directly to Mr. Rubin, who will be operating under the supervision of the Court until the radio station can be sold and the proceeds divided in accordance with the Court's ruling.

2)      Accounting of monies that has been taken out of the Corporation as a distribution of profits since the death of [Ethel]. The Court notes

for the record that according to the accountant, Mr. Trimm, that was hired by the current Administrator, and that based on Mr. Trimm's testimony, there is a total of $403,160.88 representing distributions of profit and that it is normal for small business owners to use their business and expend monies that belong to them as owners; and when no legitimate business reason can be found for the expense, it is normally qualified as an owner taking profits. The Court finds that the taking of profits was not permissible since the Succession was under administration, that Mr. Trimm's figure is correct, and orders that the money be returned to the business. Additionally, the Court finds that one-half (1/2) of that amount or $201,580.44 is the amount of which [Fred's] Succession is entitled to be reimbursed for the distribution of profits that should not have been taken out.

3)  Fair Rental Value of Property Located at 305 Enterprise Boulevard to be returned to the Succession of [Fred]. The Court notes for the record that based on undisputed testimony the amount of rent paid each month by [Ethel] was $5,000 for B&C Broadcasting. The Court orders that one-half (1/2) of that amount be reimbursed, as a credit, to the Estate of [Fred].

4)  Reimbursement for Loan Payments. The Court notes for the record that eighteen-percent (18%) is the amount assessed by Mr. Trimm as to what is related to the business. The Court finds that [Ethel] intermingled the way she did business and the debt, in its entirety, belong to the station without any reimbursements for amounts paid to the loan.

5)  Fair Rental Value of Property Located at 711 Kingsley Street. The Court notes for the record that it finds the request of Ms. Moore and Ms. Burns to [be] fair but not the amount requested as the Court is familiar with the area in which the property is located. The request for $1,000 a month rent is decreased to $500 a month by the Court, with $28,500 towards the reimbursement of the Succession of Fred Blackwell.

6)  General Ledger Note of a December Loan. The Court finds that this loan was taken out, by the Administrator, after the death of [Ethel] and without authorization of the Court and therefore, cannot be assessed to either Succession.

7)  Attorney Fees. The Court notes for the record that these fees were taken out of the Corporation for representation. The Court finds this to be an improper expense and orders that the Succession of Fred Blackwell be credited $62,797 for attorney[] fees taken out of the business during the Succession claim.

8)  Contract Labor. This request is DENIED by the Court.

A judgment in accordance with this oral ruling was signed on November 6, 2019. It is from this judgment that the heirs of Ethel have appealed. Specifically, the Succession of Ethel alleges the following nine assignments of error:

1. The Trial Court appointed an "administrator" to the Succession of Ethel Faye Brown Blackwell who was not named in any pleading before the Court;

2. The Trial Court appointed a disqualified person to serve as "administrator" of the Succession of Ethel Faye Brown Blackwell;

3. The Trial Court appointed an "administrator" to oversee a corporation in violation of the Louisiana Business Corporation Act, and in violation of the rights held by the corporation's board of directors;

4. The Trial Court appointed a single "administrator" to oversee competing interests;

5. The Trial Court appointed other corporate management officers in violation of the Louisiana Business Corporation Act;

6. The Trial Court failed to treat a Louisiana corporation as a separate and distinct legal entity in holding the corporation itself is "community property," rather than treating the corporation's shares as potential community property;

7. The Trial Court ordered a total liquidation of a corporation in violation of the Louisiana Civil Code and the Louisiana Business Corporation Act;

8. The Trial Court miscalculated a credit due to the heirs of Ethel Faye Brown Blackwell;

9. The Trial Court miscalculated the reimbursement owed to the heirs of Fred Blackwell[.]

**STANDARD OF REVIEW:**

In order for an appellate court to set aside a trial judge's factual findings, manifest error must exist. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the fact finder is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880

8

(La.1993). However, "when a trial court applies incorrect legal principles and these errors materially affect the outcome of a case and deprive a party of substantial rights, legal error occurs." *Vidrine v. Vidrine*, 17-722, p. 8 (La.App. 3 Cir. 5/2/18), 245 So.3d 1266, 1274. Legal errors are reviewed under the de novo standard of review. *Id.*

In this case, the trial judge heard three days of evidence, made factual findings as well as credibility determinations. Accordingly, we find the standard of review applicable to this case is manifest error. *See Rosell*, 549 So.2d 840.

**ASSIGNMENT OF ERROR NUMBER ONE AND TWO:**

Both assignments of error one and two address the appointment of Mr. Rubin as administrator of the Succession of Ethel and thus, will be considered together. The Succession of Ethel argues that the trial court erred in appointing Mr. Rubin to serve as "administrator" of its estate because he has no prior connection or involvement with either succession and because neither the successions nor the pleadings request his specific appointment. Further, the Succession of Ethel argues that Mr. Rubin is not qualified to serve as an administrator under La.Code Civ.P. art. 3097(B).[1]

In response, the Succession of Fred argues that the trial court had authority under La.Code Civ.P. art 3111 to appoint a provisional administrator because Mr. Brown failed to appear at trial and because the record evidences the fact that the Succession of Ethel improperly distributed proceeds and, thus, "breach[e]d a duty

---

[1] Louisiana Code of Civil Procedure Article 3097(B) provides:

> No person may be appointed dative testamentary executor, provisional administrator, or administrator who is not the surviving spouse, heir, legatee, legal representative of an heir or legatee, or a creditor of the deceased or a creditor of the estate of the deceased, or the nominee of the surviving spouse, heir, legatee, or legal representative of an heir or legatee of the deceased, or a co-owner of immovable property with the deceased.

owed to the heirs and co-owners." The Succession of Fred further argues that the appointment of Mr. Rubin was reasonable because he will oversee only the administration of community assets since the judgment "placed the heirs in possession of the assets in the Succession of [Ethel][.]"

Louisiana Code of Civil Procedure Article 3111 addresses the appointment of provisional administrators:

> The court may appoint a provisional administrator of a succession, pending the appointment of an administrator or the confirmation of an executor, when it deems such appointment necessary to preserve, safeguard, and operate the property of the succession. On the application of an interested party, or on its own motion, when such an appointment is deemed necessary, the court may appoint a qualified person as provisional administrator forthwith.

The Official Revised comments (1960) to Article 3111 provide, in pertinent part:

> (a) The general language, "preserve, safeguard, and operate the property of the succession," is intended to give the court discretion in determining the necessity for the appointment of the provisional administrator.
>
> (b) When the appointment of a provisional administrator is necessary, there will be no time available for the giving of notice to the heirs, creditors, and other interested parties, or to permit them to oppose the appointment of the particular person whom the court selects. The court must be empowered to act immediately, on the application of any interested person, and even on its own motion.

Louisiana Code of Civil Procedure Article 3112 addresses the duties and obligations of a provisional administrator as follows:

> A provisional administrator shall furnish security and take the oath of office required by Articles 3152 and 3158, respectively. He shall continue in office until an administrator or executor has been qualified, or until the heirs or legatees have been sent into possession.
>
> Except as otherwise provided by law, a provisional administrator has all of the authority and rights of an administrator, and is subject to the same duties and obligations, in the discharge of his functions of preserving, safeguarding, and operating the property and business of the succession.

10

Upon reviewing the testimony from trial, it is clear to this court that the trial judge had serious concerns regarding Mr. Brown's bookkeeping and various bank transactions on behalf of the Succession of Ethel. In fact, at one point in the trial, the trial judge stopped the testimony to discuss the case privately with the attorneys and, upon returning to the bench stated: "This is a case that cries out for a settlement. The issues aren't that complex." The trial judge further stated, in pertinent part:

> I am holding the record open. Mr. Hawkins [trial counsel for the Succession of Ethel] is going to get me the actual - - I say, raw material. Meaning the actual - - I'm sure he explained it to you, Ms. [Roxie Brown] Smith. But the actual - - I need something that shows me any moneys that you or your siblings took out of - - if you took it out of your retirement account, I need the statement from that showing the withdrawal.

> I need to see how the money was transferred. If it was all transferred to your brother [Mr. Jackie Brown] and there's a check to him, I need to see that. I need to see what your brother did, what account he deposited it in to get it to the corporation. Okay.

> When I receive that, I will give a credit for the amounts that I am going to find that were taken out of the corporation improperly. Okay? But it will be subject to a credit once I have that verification.

> Then once I figure that amount out, whatever that amount is, then that is the amount that is owed to both estates, 50/50, to the estate of Fred Blackwell and to the estate of Ethel Faye Brown Blackwell.

> I've also said to both lawyers that it is the opinion of this Court that the specific bequests that were made by Ms. Blackwell, those people should be put in possession of those specific requests.

> That leaves us with what should be under administration, and that's the radio station. What I said to both attorneys in the back is the Court is inclined to appoint a provisional administrator; and what I am leaning to and I haven't made a final decision on that because I'm going to give the date of when I'm going to make my final ruling.

> But at this point I am leaning to appointing an attorney that is not connected with either side to serve as the provisional administrator. I am leaning to appointing Mr. Bartie as a manager of the station under the supervision of the attorney that is appointed by the Court until we can sell the station, get the station running at a profit so that we can completely close both of these successions. That is the goal of the Court.

11

At this time the record is going to be held open for that information that Mr. Hawkins is going to supply the Court.

Louisiana Code of Civil Procedure Article 3111 provides authority for the trial judge, on her own motion, to appoint Mr. Rubin as provisional administrator of the succession upon finding that the appointment was "necessary to preserve, safeguard, and operate the property of the succession." Under these unique facts, we find the record supports the trial court's decision to appoint Mr. Rubin as the provisional administrator over the community assets until B&C Broadcasting, Inc. can be sold, and the assets split between the two successions. Accordingly, we find no merit to these assignments of error.

**ASSIGNMENT OF ERROR NUMBER THREE:**

The third assignment of error addresses whether the trial court's appointment of Mr. Rubin violated the Louisiana Business Corporation Act. The Succession of Ethel argues that the trial court "failed to consider the powers held by the corporate board of directors" before selecting "Mr. Rubin as chief officer of the corporation" and that this appointment violates the Louisiana Business Corporation Act.[2] In support of this argument, the Succession of Ethel cites to La.R.S. 12:1-801, a statute that addresses the requirement for and functions of board of directors.[3]

---

[2] Although the Succession of Ethel argues that the trial court appointed "Mr. Rubin as chief officer of the corporation[,]" we find that the trial court judgment merely appointed Mr. Rubin to be the provisional administrator to the succession in order to oversee "the operations of B&C Broadcasting, Inc. operating KZWA Radio Station FM 104.9 and to give a full report to the court as necessary until the station can be sold[.]"

[3] La.R.S. 12:1-801 provides, as follows:

A. Except as provided in R.S. 12:1-732, each corporation must have a board of directors.

B. All corporate powers shall be exercised by or under the authority of the board of directors of the corporation, and the business and affairs of the corporation shall be managed by or under the direction, and subject to the oversight, of its board of directors, subject to any limitation set forth in the articles of incorporation or in an agreement authorized under R.S. 12:1-732.

C. In the case of a public corporation, the board's oversight responsibilities include attention to all of the following:

In response, the Succession of Fred argues that the corporation should not receive the benefits afforded under the Louisiana Business Corporation Act "when there are commingling of corporate and shareholder funds (which the trial court impliedly found in the present case), failure to follow statutory formalities for incorporation and transaction of corporate affairs, and failure to hold regular shareholder or directors meetings." It further argues that "any objection to the court's judgment with regard to the management of B&C Broadcasting, Inc. should be contested by the corporation, and not the succession."

After reviewing the record, we agree with the Succession of Fred that B&C Broadcasting, Inc. was being managed more as a family owned small business than a corporation. The general rule is that corporations are distinct legal entities, separate from the individuals who comprise them; however, a court may ignore the corporate fiction where the corporation is found to simply be the "alter ego" of the shareholder. *Riggins v. Dixie Shoring Co., Inc.,* 590 So.2d 1164 (La.1992). In *Riggins*, the Louisiana Supreme Court set forth non-exclusive "factors courts consider when determining whether to apply the alter ego doctrine" including: "1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization;

_____

(1) Business performance and plans.

(2) Major risks to which the corporation is or may be exposed.

(3) The performance and compensation of senior officers.

(4) Policies and practices to foster the corporation's compliance with law and ethical conduct.

(5) Preparation of the corporation's financial statements.

(6) The effectiveness of the corporation's internal controls.

(7) Arrangements for providing adequate and timely information to directors.

(8) The composition of the board and its committees, taking into account the important role of independent directors.

4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Id.* at 1168.

At trial, William Trimm testified that he is a Certified Public Accountant ("CPA") and has been the bookkeeper for B&C Broadcasting, Inc. since 2015-2016. Mr. Trimm testified that he considers B&C Broadcasting, Inc. a small business and that when he was hired, "the books were in a disarray[.]" When Mr. Trimm was asked who owned the corporation, he testified that he was told the owners were three siblings of Ethel but that he had no paperwork to support this claim. Counsel for the Succession of Fred continued questioning Mr. Trimm about the ownership of the corporation, as follows:

> **Q** What I'm sharing with you is the misinformation you have been receiving and much of what you have done has been based on misinformation because there's nothing in the record that shows that Jackie Brown is no more than the administrator [of] the succession. And you've got three people as owners without a judgment of possession. You should have been shown Jackie - - Faye Blackwell and Faye Blackwell's Succession owns the property. They're the members contributing.
>
> . . . .
>
> **Q** So, do you have any way to explain why is it that the people that hire you, that doesn't own anything, he's an administrator of this estate, how is it that he decides how much money that everybody is entitled without any ownership interest and why you don't require more?
>
> **A** I guess the only thing I can say to you is that I have a lot of faith in people and I don't doubt their integrity when they bring me information and ask me to help them catch up and clean up a bad bookkeeping situation because they came to me and brought me a mess.

We also find the record devoid of any evidence offered at trial showing a list of the board of directors for B&C Broadcasting, Inc., a list of the shareholders, or whether any corporate meetings have been held since Ethel's death. Jurisprudence supports our decision to pierce the corporate veil and apply the "alter ego" doctrine in situations such as this when shareholders disregard the requisite corporate

formalities to the extent that the shareholders are no longer distinct from the corporate entity. *Hector v. Mo-Dad Envtl. Serv., LLC*, 13-1184 (La.App. 3 Cir. 3/5/14), 134 So. 3d 133.

Nonetheless, even if this court were to find that B&C Broadcasting, Inc. was operating as a corporate entity, we find that the trial court's appointment of Mr. Rubin as administrator to the succession does not violate the Louisiana Business Corporation Act. Mr. Rubin, as the succession representative, has fiduciary duties under La.Code Civ.P. art. 3191(A), which states:

> A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.

Further, "[a] succession representative has the duty as a prudent administrator to obtain the best price reasonably obtainable in a sale of a succession asset." *Fuller v. Baggette*, 36,952, p. 13 (La.App. 2 Cir. 5/6/03), 847 So.2d 26, 34, *writ denied*, 03-2076 (La. 11/7/03), 857 So.2d 498. Louisiana Code of Civil Procedure Article 3197 also burdens Mr. Rubin with the duty "to close the succession as soon as advisable." Thus, an executor owes to legatees a duty of faithful administration of succession affairs in the same way as a director of a corporation owes to shareholders a duty of faithful administration of the corporation's affairs. *See* La.Code Civ.P. art. 3191;

15

La.R.S. 12:1-842(A),[4] La.R.S. 12:1-831(A),[5] and 12:1-832(A).[6] Both a succession

representative and a corporate director rely on reports and accountings when

[4] La.R.S. 12:1-842(A) sets forth the standard of conduct required of officers of a corporation and states that an officer has the duty to act "(1) In good faith. (2) With the care that a person in a like position would reasonably exercise under similar circumstances. (3) In a manner the officer reasonably believes to be in the best interest of the corporation."

[5] La.R.S. 12:1-831(A) provides as follows:

> A. A director shall not be liable to the corporation or its shareholders for any decision to take or not to take action, or any failure to take any action, as a director, unless the party asserting liability in a proceeding establishes both of the following:
>
> (1) No defense interposed by the director based on R.S. 12:1-832, a provision in the articles of incorporation authorized by R.S. 12:1-202(B)(6), the protection afforded by R.S. 12:1-861 for action taken in compliance with R.S. 12:1-862 or R.S. 12:1-863, or the protection afforded by R.S. 12:1-870, precludes liability.
>
> (2) The challenged conduct consisted or was the result of one of the following:
>
> (a) Action not in good faith.
>
> (b) A decision that the director did not reasonably believe to be in the best interests of the corporation, or as to which the director was not informed to an extent the director reasonably believed appropriate in the circumstances.
>
> (c) A lack of objectivity due to the director's familial, financial, or business relationship with, or a lack of independence due to the director's domination or control by, another person having a material interest in the challenged conduct, which relationship or which domination or control could reasonably be expected to have affected the director's judgment respecting the challenged conduct in a manner adverse to the corporation, and after a reasonable expectation to such effect has been established, the director shall not have established that the challenged conduct was reasonably believed by the director to be in the best interests of the corporation.
>
> (d) A sustained failure of the director to devote attention to ongoing oversight of the business and affairs of the corporation, or a failure to devote timely attention, by making, or causing to be made, appropriate inquiry, when particular facts and circumstances of significant concern materialize that would alert a reasonably attentive director to the need therefore.
>
> (e) Receipt of a financial benefit to which the director was not entitled or any other breach of the director's duties to deal fairly with the corporation and its shareholders that is actionable under applicable law.

[6] La.R.S. 1-832(A) provides as follows:

> A. Except to the extent that the articles of incorporation limit or reject the protection against liability provided by this Section, no director or officer shall be liable to the corporation or its shareholders for money damages for any action taken, or any failure to take action, as a director or officer, except for one of the following:
>
> (1) A breach of the director's or officer's duty of loyalty to the corporation or the shareholders.

administrating a succession and a corporation. Thus, we find no merit to the Succession of Ethel's argument that the trial court's appointment of Mr. Rubin violates the Louisiana Business Corporation Act.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In its fourth assignment of error, the Succession of Ethel argues that the trial court erred in appointing Mr. Rubin to oversee "competing interests" and "to serve two different roles." Specifically, it argues that Mr. Rubin was appointed "to oversee the daily operations of the radio station and organize the radio station for sale" and also to "oversee a specific succession whose heirs who [sic] do not want to sell their interests in the radio station."

In response, the Succession of Fred argues that it, as co-owner, "petitioned for a partition of the radio station and, the trial court has ordered the radio station be sold. Thus, the administrator's fiduciary duty to the heirs is consistent with the duty that is owed with regard to the administration of the station . . . ." We agree. As we discussed above, an executor owes to legatees a duty of faithful administration of succession affairs in the same way as a director of a corporation owes to shareholders a duty of faithful administration of the corporation's affairs. Accordingly, we find no merit to the Succession of Ethel's argument that the trial court appointed Mr. Rubin to oversee competing interests.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

In its fifth assignment of error, the Succession of Ethel argues that the trial court's appointment of Mr. Bartie as manager of the daily operations of the radio

---

(2) An intentional infliction of harm on the corporation or the shareholders.

(3) A violation of R.S. 12:1-833.

(4) An intentional violation of criminal law.

17

station violates the Louisiana Business Corporation Act. The Succession of Ethel argues that the power to appoint officers and management belongs to the board of directors of a corporation and that the court "may not supersede the board in this instance, especially when such action is not specifically before the [c]ourt for hearing."

In response, the Succession of Fred argues that it "sought the appointment of Mr. Rob Neal to act as chief administrative officer of the radio station" but that the court rejected its request and instead appointed Mr. Bartie. Thus, the Succession of Fred argues that the issue of the appointment of a manager for the station was before the court and that the trial court acted reasonably in appointing an independent manager, who had been with the station for several years, to oversee the day-to-day management in order to protect the assets of both successions. We agree.

Again, as stated under assignment of error three, we see no evidence in the record to support a finding that B&C Broadcasting, Inc. was following corporate formalities and, as such, apply the "alter ego" doctrine under these unusual facts. However, even if this court were not to apply the "alter ego" doctrine, we would still find that the trial court properly appointed Mr. Bartie as he had been working for the radio station as the office manager and had experience in the areas of traffic (also called Broadcast Software), accounting, and sales from 1995 to 2011, and then again from 2014-2015. Mr. Bartie's testimony reflected that he had the experience and the requisite knowledge to operate and manage B&C Broadcasting, Inc. for the benefit of the two successions. Furthermore, Ms. Moore [the administrator of Fred's succession] testified that she petitioned the court to appoint new management for B&C Broadcasting, Inc. and that she was comfortable with Mr. Bartie because "[Ethel] trusted [him]" and because "Mr. Bartie ran the business for quite some time." For these reasons, we find no merit to the Succession of Ethel's argument

18

that the trial court erred in appointing Mr. Bartie to manage the daily operations of the radio station until the station is sold.

**ASSIGNMENT OF ERROR NUMBER SIX:**

In its sixth assignment of error, the Succession of Ethel argues that the trial court failed to treat a Louisiana corporation as a separate and distinct legal entity in holding the corporation itself as "community property" rather than treating the "corporations shares" as potential community property. The Succession of Ethel argues that B&C Broadcasting, Inc. is a juridical person and is thus distinct from its members. In support of this argument, it cites to *Simmons v. LUBA Workers' Compensation*, 16-523, p. 4 (La.App. 3 Cir. 11/2/16), 206 So.3d 397, 402, wherein it states that "[a]s a general rule, this legal tenet [juridical person] applies regardless of the fact that one person owns all or a majority of the stock of a corporation, and a sole shareholder or majority shareholder is not liable for corporate debts, unless he binds himself individually for those debts." Thus, the Succession of Ethel argues that the trial court erred in "treating a separate and distinct corporate entity as community property."

In response, the Succession of Fred argues that the testimony of Mr. Bartie supports the trial court's finding that, as of 2000, Ethel was the sole stockholder of B&C Broadcasting, Inc., and that because she bought and managed the station during her marriage with Fred, the corporation is considered community property. Further, the Succession of Fred argues that because this is a "family-owned business with no owners other than Mr. and Mrs. Blackwell at the time of Fred Blackwell's death [in March 2003], the distinction of 'shares of a corporation' as compared to 'corporation' does not cause confusion[.]" The Succession of Fred cites to *Queenan v. Queenan,* 492 So.2d 902, 912 (La.App. 3 Cir. 1986), *writ denied*, 496 So.2d 1045 (La.1986), wherein this court recognized that "[t]he relationship of spouses and

former spouses (until there has been a property settlement following termination of the community regime) cuts through the entirety of the law, including the laws of partnership, property, and corporations."

Again, we see no evidence in the record to support a finding that B&C Broadcasting, Inc. was following corporate formalities and find that the "alter ego" doctrine applies to these facts. However, even if this court were to find that B&C Broadcasting, Inc. is a juridical person and is thus distinct from its members, we still find no error in the trial court's judgment upon finding that this case is more analogous to a property settlement following the termination of a community regime.

Although we agree with the Succession of Ethel that the general concept is that a corporation is a separate legal entity, distinct from its stockholders, we find that the primary purpose of the corporate form is to limit the liability of individual stockholders, shielding them from the liabilities of the corporation. See *Riggins*, 590 So.2d at 1168 (wherein it stated that "this shareholder liability shield encourages business investments in high-risk areas by enabling investors who utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business.") However, shareholder liability is not at issue in this matter. For this reason, we agree with the Succession of Fred that this case is more like "a settlement following the termination of the community regime following a divorce."

At trial, Mr. Bartie testified, by the year 2000, the only stockholder of B&C Broadcasting, Inc. was Ethel. Mr. Bartie stated that "[Ethel] issued herself stock way back when she first started because she invested monies into the corporation" and that "she went from having a minority share in the corporation to having a majority share." Mr. Bartie testified that "around 2000 or so," Ethel bought out the

20

minority shareholders and, at that time, she and her husband, Fred, became the principal sole owners of the station. Specifically, Mr. Bartie testified as follows:

**Q** The only thing I have is, you talk about who owned the station back when it started as B&C; that was Ms. Collins and Ms. Blackwell. Do you know that - - a fact of the matter is, it's recorded in the courthouse record that Ms. Blackwell bought Ms. Collins out?

**A** Right. I remember that.

**Q** And, Mr. Foster was bought out a long time before he bought her out. So, actually, Ms. Blackwell is the only owner of the station because she bought all of her partners out. She kept that name B&C, but she owned the station with her husband[,] and she was married at the time she bought it.

**A** Yes.

**Q** Do you agree with that?

**A** I agree.

It is also worth noting that this court previously held, in *Foster v. Blackwell*, 747 So.2d 1203 (La.App. 3 Cir. 1999), *writ denied*, 754 So.2d 970 (La. 2000), that Ethel, as a shareholder/officer of B&C Broadcasting, Inc., did not breach her fiduciary duty to other shareholders by purchasing "cash call" stocks since the other shareholders were notified of the offerings, could have purchased the majority of offered shares, and the corporation would have failed without the immediate influx of capital. We find Mr. Bartie's testimony, along with the fact that the record justifies the application of the "alter ego" doctrine under these unique facts, supports the trial court's judgment that found "the ownership of B&C Broadcasting [to be] fifty-percent (50%) Fred Blackwell and fifty percent (50%) Ethel Faye Brown Blackwell." Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER SEVEN:**

In its seventh assignment of error, the Succession of Ethel argues that the trial court erred in ordering a total liquidation of a corporation in violation of the Louisiana Civil Code and the Louisiana Business Corporation Act.

The evidence in the record substantiates the finding that Fred and Ethel's heirs own B&C Broadcasting, Inc. in indivision. Louisiana Civil Code Article 797 defines ownership in indivision as "[o]wnership of the same thing by two or more persons" and that "[i]n the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal." Louisiana Civil Code Article 807 provides, in pertinent part: "No one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or juridical act. Any co-owner has a right to demand partition of a thing held in indivision." Additionally, La.Civ.Code art. 809 provides: "The mode of partition may be determined by agreement of all the co-owners. In the absence of such an agreement, a co-owner may demand judicial partition."

Based on the record, Ms. Moore, on behalf of the Succession of Fred, was within her legal rights to seek a judicial partition (sale) of B&C Broadcasting, Inc. We find the trial court was well within her discretion in ordering the sale of the business after the testimony at trial indicated that the parties to the two successions were not in agreement as to any partition of the estate property and the two successions could not agree on the management of B&C Broadcasting, Inc. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER EIGHT:**

In its eighth assignment of error, the Succession of Ethel argues that the trial court miscalculated a credit due to the heirs of Ethel. The heirs of Ethel argue that since her death, they have managed B&C Broadcasting, Inc. and have contributed

$463,500.00 dollars to keep the station running from January 2015 through October 2019. The Succession of Ethel does not specifically allege how the trial court erred in its calculation of $133,000.00 for a credit due but rather merely argues that the trial court did not properly calculate the credit. Thus, it requests this court remand the issue of reimbursement to the trial court for further consideration.

In response, the Succession of Fred argues that the heirs of Ethel failed to offer sufficient evidence in support of the member contributions they now assert they are entitled to and that the Succession of Ethel "does not set forth in what manner it alleges the trial court abused its discretion or how the calculations were in error." We agree.

Without more specificity as to how the trial court erred in its calculations for the credit due, we find the trial court's reasons helpful in reviewing this assignment of error. Specifically, the trial court provided the following oral reasons for its conclusion that the credit owed is $133,000.00:

> All right. I went through - - at this time I will file in the record everything that I was given by Mr. Hawkins on a request for credits for funds expended by the family of [Ethel] to keep the station operable.
>
> I had expressed in chambers that I was uncomfortable with stocks being disbursed by the administrator, shares being disbursed by the administrator, loans being undertaken by the administrator from family members to run the business and - - but I was willing to consider anything that there was actual proof where I could see how the money went into the business.
>
> I was not comfortable with most of the evidence that was presented to me, uncomfortable in making a reimbursement. I have reviewed the response from the attorney, Mr. Carter, representing the succession of Mr. Blackwell. He agrees to a certain amount, and I want to see this case resolved.
>
> Honestly, based on what I've seen, my amount would probably be less. So[,] I'm going to go with his number. And his number of what he was willing to agree to is [$]266,000 - - actually, that's not his number because he wants me to take the [$]40,000 out. I'm not even going there. Forty thousand was loaned to the business. It may not

have been done properly, but it was done by nonlegal experts. So that is not something that I would hold against anyone.

Half of that is what would be owed from the estate of Fred Blackwell as far as giving a credit for any money that's owed to them, and half of that would be [$]133,000. So[,] it will be subject to a credit of [$]133,000, the amounts that would be owed from the Brown Blackwell estate to the Fred Blackwell estate.

As we previously stated under assignment of error one and two, it is clear to this court that the trial judge had concerns over Mr. Brown's bookkeeping and various bank transactions on behalf of B&C Broadcasting, Inc. and the Succession of Ethel. Further, we, too, find there to be discrepancies between the bank records and the documents submitted in support of the alleged member contributions. It is also worth reiterating the fact that the trial court was "not comfortable with most of the evidence that was presented" and would have awarded less than the $133,000.00 suggested by the Succession of Fred. Without more specificity to this assignment of error, we find that the record supports the trial court's reasons for calculating a credit of $133,000.00 to the Succession of Ethel. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER NINE:**

In its ninth assignment of error, the Succession of Ethel argues that the trial court miscalculated the reimbursement owed to the heirs of Fred. It alleges that the appropriate retroactive date for any reimbursement to the Succession of Fred would be: (1) December 22, 2016, the date the Petition for Intervention was filed; (2) May 12, 2017, the date the trial court invalidated Fred's Last Will and Testament; or (3) November 6, 2019, the date the trial court recognized the heirs of Fred and placed them in possession of property.

In response, the Succession of Fred cites to La.Civ.Code art. 890 while arguing that the trial court properly calculated the reimbursement date to be January

24

21, 2015, the date of Ethel's death. It alleges that this is the date that Ethel's "usufruct over the share of the community property she shared with her husband terminated[,]" and that "the unencumbered property succeeded to the two daughters of Fred Blackwell."

Louisiana Civil Code Article 890 states "[i]f the deceased spouse is survived by descendants, the surviving spouse shall have a usufruct over the decedent's share of the community property to the extent that the decedent has not disposed of it by testament. This usufruct terminates when the surviving spouse dies or remarries, whichever occurs first."

In Louisiana, "[t]he legal regime of community property is terminated by the death . . . of a spouse[.]" La.Civ.Code art. 2356. Therefore, upon Fred's death on March 22, 2003, the community property regime terminated and Fred's undivided one-half interest in the former community property was transferred to his two children, subject to the legal usufruct of Ethel. In addition, at Fred's death, Ethel maintained ownership of her undivided one-half interest in the former community property. *See* La.Civ.Code art. 2336 (stating that "[e]ach spouse owns a present undivided one-half interest in the community property.")

Then, at Ethel's death, her siblings inherited her undivided one-half interest in the former community property estate and any income derived from it. *See* La.Civ.Code art. 888 (stating that "[d]escendants succeed to the property of their ascendants. They take in equal portions and by heads if they are in the same degree.") In addition, Ethel's usufruct over Fred's undivided one-half interest in the former community property terminated at Ethel's death, entitling Fred's two children to the return of their undivided one-half interest in the former community property, as well as their undivided one-half interest in any income derived from former community property. *See* La.Civ.Code arts. 535-549.

25

Therefore, we find that the trial court correctly calculated the appropriate reimbursement date to be the date of the death of Ethel, which was January 21, 2015. As such, we find no merit to this assignment of error.

**DECREE:**

For the foregoing reasons, we affirm, in its entirety, the trial court's November 5, 2019 judgment. Costs of this appeal are assessed to appellant, the Succession of Ethel.

**AFFIRMED.**