847 So.2d 26 (2003)
James Roy FULLER, Jr., Executor of the Succession of Annie Mae Fuller Anderson, Plaintiff-Appellant,
v.
Wade R. BAGGETTE, Sr., et al., Defendants-Appellees.
No. 36,952-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 2003.
Rehearing Denied June 19, 2003.
*27 Blackwell, Chambliss, Henry, Caldwell, Cagle & Camp, LLP, by Sam O. Henry III, Ronald Patrick Camp, West Monroe, for Appellant.
Davenport, Files & Kelly, LLP, by Thomas W. Davenport, Jr., Monroe, for Appellees, Wade R. Baggette, Auburn Corporation, and Nancy W. Baggette.
John Villars Baus, Jr., New Orleans, for Intervenor Appellee, New England Insurance Company.
*28 Before WILLIAMS, CARAWAY and DREW, JJ.
DREW, J.
In this breach of fiduciary duty suit against the administrator of two successions, plaintiff appeals a judgment granting the administrator's exception of prescription. We reverse.

FACTS
Helen Smith Fuller ("Helen") died intestate on May 11, 1976. She was survived by only one descendant, her daughter Jo Anne Fuller ("Jo Anne"). Jo Anne administered some of the properties that had belonged to her mother, but she never opened her mother's succession. Jo Anne died intestate on January 20, 1984, leaving as her only heirs one maternal aunt, Elizabeth Smith Collins ("Collins"), and two paternal aunts, Clara Fuller Tobin ("Tobin") and Annie Mae Fuller Anderson ("Anderson").
Plaintiff, James Roy Fuller, Jr. ("Fuller"), is Anderson's nephew. Defendant Wade Baggette ("Wade") is the husband of defendant Nancy Baggette ("Nancy"), who is Anderson's grandniece.
In order to fully appreciate the history of this case, it is necessary to chronicle the developments in the various successions involving this extended family.

FULLER SUCCESSIONS

Succession of Helen Fuller
Helen died intestate on May 11, 1976. Upon the nomination of Anderson and Tobin, Wade was appointed administrator of Helen's succession on March 19, 1984. Claiming that Wade was not qualified under La. C.C.P. art. 3097 to serve as administrator, Collins petitioned for Wade's removal, which the trial court declined to order. This court on rehearing concluded that Wade was qualified to serve as succession representative; however, his appointment was voided because the petition seeking Wade's appointment lacked an affidavit establishing the trial court's jurisdiction. Succession of Fuller, 480 So.2d 754 (La.App. 2d Cir.1985). The Supreme Court reversed this court on the jurisdiction issue. Succession of Fuller, 482 So.2d 619 (La.1986).
On January 28, 1986, Wade, as administrator, petitioned the trial court for approval to sell all of the movable and immovable property of Helen's succession at private sale. The sale price was $180,000, with the heirs named as buyers. Collins opposed the sale. The trial court ruled on September 28, 1989 that the sale would be permitted. Wade, his wife, and in-laws were to receive a total of one-third of the property for $60,000. Wade was also awarded compensation of $43,034.35 for his services as administrator.

Succession of Jo Anne Fuller
Jo Anne died on January 20, 1984.[1] On January 25, 1984, Anderson retained Wade to represent her in Jo Anne's succession and nominated him as administrator of the succession. Wade was appointed provisional administrator, serving from January 25 until October 31, 1984, when Collins was appointed administratrix of Jo Anne's succession. Collins had been appointed administratrix of the succession on March 6, 1984, subject to her qualifying. Collins was issued letters testamentary on October 31, 1984.
Wade sought $170,000 from the succession for services he rendered as provisional *29 administrator and attorney. The succession refused payment, so he sued. Wade was awarded $128,836 in fees and expenses for his services. This court deleted that portion of the award related to the attorney fees charged by Wade while serving as provisional administrator, and affirmed the remainder. See, Succession of Fuller, 501 So.2d 1017 (La.App. 2d Cir. 1987), writ denied, 504 So.2d 881 (La. 1987).
In 1988, Anderson, Wade, Nancy, and Nancy's parents filed suit against Collins and her lawyers. Among the allegations were that Collins and her attorneys allowed promissory notes to prescribe, incurred federal tax liability, and breached the duty of prudent management. The claims against Collins were settled. See, Anderson v. Collins, 26,142 (La.App.2d Cir.1/6/95), 648 So.2d 1371, writs denied, 95-0629 and 95-0783 (La.App.2d Cir.4/21/95), 653 So.2d 576.
Wade again became administrator of Jo Anne's succession on April 30, 1990, after Collins resigned.

Consolidation Ordered
On April 22, 1986, Collins, in her capacity as administratrix of Jo Anne's succession, filed a petition for possession in Helen's succession. Unconditionally accepting the assets and liabilities of Helen's succession, Collins argued that the assets of Helen's succession would become the assets of Jo Anne's succession because Jo Anne had been Helen's only heir. Wade, in his capacity as administrator of Helen's succession, responded with the exception of no right of action, which the trial court sustained.
In Succession of Fuller, 549 So.2d 878 (La.App. 2d Cir.1989), this court reversed the trial court, holding that during the administration of Jo Anne's succession, Collins as administratrix had the exclusive right to collect any succession assets remaining in Helen's succession through the exercise of any rights ordinarily available to Helen's heirs. However, the supreme court granted Wade's writ and reversed the judgment of this court. More importantly, the supreme court consolidated the successions and ordered that the case be remanded to the district court to "place the proper heirs in possession after due proceedings." See, Succession of Fuller, 556 So.2d 47 (La.1990), rehearing granted, 556 So.2d 1289 (La.1990). The application for rehearing was later dismissed upon Wade's motion. In re Succession of Fuller, 561 So.2d 499 (La.1990).

Tax Problems
A proof of claim filed in Jo Anne's succession by the Internal Revenue Service ("IRS") on October 29, 1984, showed that Jo Anne owed over $1,000,000 in unpaid income taxes. In April of 1985, the estate tax return for Jo Anne's succession showed that the gross estate was worth $5,788,737 and that $644,097 was owed in estate taxes. However, an April 1988 letter from the IRS gave notice to Collins that there was an estate tax deficiency of over $4,445,000 in Jo Anne's succession.
On January 8, 1990, Baggette, as the administrator of Helen's succession, received a notice of levy from the IRS. At that time, Jo Anne Fuller owed over $1,650,000 in unpaid income taxes, penalties and interest. The levy attached to any interest held by Jo Anne in the movable property of Helen's succession. Also in January of 1990, Collins, as administratrix of Jo Anne's succession, received a notice of seizure from the IRS. Jewelry belonging to Jo Anne's succession had been seized due to the nonpayment of income taxes.

Sale of Succession Assets
On March 29, 1990, Collins and Wade, in their administrative capacities, jointly *30 petitioned the court for approval to sell immovable property (specifically a house, alley, and fourplex) located in Ouachita Parish, and movable property, except for personal jewelry, owned by the successions in indivision. It was to be sold to Wade or his designee for $256,000. Judgment homologating this petition was rendered on May 22, 1990. Wade was administrator of both successions at that time.
On April 19, 1990, an act of sale was executed in which Collins sold her one-third interest in Jo Anne's succession to Auburn Corporation for $15,000. On that same date, Collins also executed an act of sale in which she sold her one-third interest in Helen's succession to Auburn Corporation for $15,000. The acts of sale were filed in the respective successions on April 30, 1990. Wade and Nancy are the shareholders and officers of Auburn Corporation.
On April 26, 1990, Collins and Wade, in their administrative capacities, jointly petitioned the court for approval to sell interests owned by the successions in immovable property located in Ouachita Parish. The property was to be sold at private sale to Auburn Corporation for $531,694.07. A judgment homologating this petition was rendered on June 4, 1990. At the time of the judgment, Wade was administrator of both successions.
On April 30, 1990, Collins petitioned the court for permission to sell all of the movable property of Jo Anne's succession at private sale to Auburn Corporation for $475,821.62. Some of the movables had been seized by the IRS in January of that year. A judgment homologating the petition was rendered on May 17, 1990. Wade was also administrator of Jo Anne's estate at the time of judgment.
Wade, as administrator of Jo Anne's estate, received a July 18, 1991, letter from the IRS which stated that the estate still owed $764,280.28 in estate taxes and interest.

Final Accountings
Wade completed his final accounting in Helen's succession on June 14, 1994, for the period from January 1, 1990, to January 12, 1990. He reported that he had no funds remaining in his hands at the end of this accounting period. Judgment homologating this final accounting was rendered on June 27, 1994.
On June 20, 1994, Wade, as administrator of Jo Anne's succession, filed Collins' final accounting of her administration for the period from January 1, 1990, to April 29, 1990. Wade reported that there were no net funds remaining in the administratrix's hands on April 29, 1990. He also reported that as of April 29, 1990, all of the property of Jo Anne's succession, including the assets of Helen's succession after the consolidation order, had been sold to satisfy the IRS income tax levy and seizure of January 1990. Wade stated that only ministerial duties remained for him as provisional administrator. Judgment homologating this final account was rendered on July 1, 1994.

ANDERSON SUCCESSION

Succession of Annie Anderson
On January 25, 1984, Anderson executed a power of attorney in favor of Wade. Five years later, Nancy obtained a power of attorney from Anderson which supplemented, but did not revoke, the one given earlier to Wade. The powers of attorney were held until Anderson's death.
Anderson executed a statutory will on November 21, 1984, in which she named Wade as succession attorney and executor, named Nancy as alternative executrix, and left the bulk of her estate to six universal legatees: Wade, Nancy, Nancy's parents, *31 and two of her nephews.[2] On July 22, 1986, Anderson executed an olographic will in which she revoked the statutory will and bequeathed her estate to her 11 nieces and nephews in equal portions. Anderson died on February 27, 1994, at the age of 93.
Nancy was appointed as provisional administratrix of Anderson's succession on February 28, 1994. A petition to probate the statutory will was filed on March 9, 1994, and Nancy was confirmed as executrix at that time. Soon thereafter, several of Anderson's nieces and nephews petitioned the court to probate the olographic will, revoke the statutory will, discharge Nancy as executrix and appoint Anderson's nephew, James Roy Fuller, Jr., as dative testamentary executor. Nancy and Wade responded by seeking to annul the olographic will on grounds of undue influence, and challenging Fuller's appointment. The trial court revoked the statutory will, vacated Nancy's appointment, and confirmed Fuller's appointment as dative testamentary executor. This court affirmed the judgment in Succession of Anderson, 26,947 (La.App.2d Cir.5/10/95), 656 So.2d 42, writ denied, 95-1789 (La.10/27/95), 662 So.2d 3.

Instant Proceedings
On June 26, 1996, James Fuller, in his capacity as the executor of the succession of Annie Anderson, filed suit against Wade, Nancy, and Auburn Corporation. Wade was sued individually and in his capacities as administrator and provisional administrator of the succession of Jo Anne Fuller, administrator of the succession of Helen Fuller, attorney, agent and attorney-in-fact of Annie Anderson pursuant to the power of attorney, and as President, Director, and stockholder of Auburn Corporation. Nancy was sued as a defendant individually and in her capacities as agent and attorney-in-fact of Annie Anderson through the power of attorney, and as Secretary-Treasurer, Director, and stockholder of Auburn Corporation.
James Fuller alleged in his lawsuit that defendants "defrauded, deceived and swindled" Annie Anderson of her inheritance of one-third of the assets belonging to the Succession of Helen Fuller, and her inheritance of one-third of the assets belonging to the Succession of Jo Anne Fuller. He further alleged that Wade, as legal representative of the successions of Helen Fuller and Jo Anne Fuller, illegally and fraudulently conveyed succession assets to Auburn Corporation for prices far below their fair market value. Fuller contended that in doing so, Wade breached his fiduciary duty to protect and preserve the assets of Jo Anne's and Helen's successions. He also asserted that Wade could have sold only a portion of the succession properties in order to satisfy the tax lien.
On October 2, 1996, defendants filed the exceptions of prescription and peremption. On May 22, 2000, the trial court granted the exceptions in part and denied them in part, ruling that in accordance with La. R.S. 9:5621, all actions against Wade except those that allegedly occurred in his capacities as administrator of Helen's succession and Jo Anne's succession had prescribed. In a supplemental ruling on June 15, 2000, the trial court decreed that all claims against Nancy and Auburn Corporation had prescribed. Judgment in accordance with the rulings was rendered on August 9, 2000. Fuller's motion for new trial objecting to the dismissal of his *32 claims against Nancy and Auburn was denied.
Fuller amended his petition to allege that Wade, Nancy, and Auburn Corporation had conspired to intentionally and willfully deceive Anderson out of her inheritance of one-third of the assets belonging to the successions of Helen and Jo Anne, making the defendants solidary obligors. Wade's malpractice insurer, New England Insurance Company, later filed a petition for intervention in the suit.
On July 6, 2001, Wade filed a second exception of prescription, arguing that actions against him as administrator of Jo Anne's succession, as well as against him as administrator of Helen's succession after January 12, 1990, had prescribed. Wade urged that the prescriptive period in La. R.S. 9:5621 commenced when he no longer had an obligation to render a final account, i.e., when the succession no longer had any assets.
The trial court rendered judgment on May 28, 2002, granting Wade's exception of prescription. The court dismissed all of Fuller's claims and actions against Wade in his capacity as administrator of Helen's succession after January 12, 1990, as well as all of Fuller's claims and actions against Wade in his capacity as administrator of Jo Anne's succession. Fuller's motion for new trial was denied.
Fuller appealed. Contending that Fuller's appeal was from a non-final judgment, Wade filed a motion to dismiss the appeal. Wade's motion to dismiss was denied by a panel of this court.

DISCUSSION

Res Judicata
Fuller argues in his initial assignment of error that the partial denial of Wade's first exception of prescription, denied as to the claims relating to Wade's service as succession administrator, had res judicata effect against Wade's subsequent exception of prescription that was granted by the trial court. However, this first ruling did not have res judicata effect as it was an interlocutory ruling. A judgment is interlocutory when it does not determine the merits but only preliminary matters in the course of an action. La. C.C.P. art 1841. La. R.S. 13:4231 describes a judgment as having res judicata effect when it is a "valid and final judgment." Gulfco Finance Co. v. Boyd, 29,975 (La.App.2d Cir.10/29/97), 702 So.2d 342, writ denied, 97-2982 (La.2/6/98), 709 So.2d 742. Accordingly, this assignment of error is without merit.

Applicable Prescriptive Period
There is no question that there has been a history of strife between Wade and some members of his wife Nancy's extended family. A review of this record reveals that some of Wade's actions have been viewed suspiciously by two of the numerous trial judges who have ruled on the exceptions, motions, and petitions filed in the various successions.
In a September 28, 1989, ruling, the trial court permitted Wade's proposal as administrator to sell all of the movable and immovable property in Helen's succession to the heirs for $180,000. The trial court stated:
At first blush, it would seem shocking that the succession representative would seek Court authority to sell at private sale all the property of the succession for $180,000 when, by a previous pleading, the same succession representative has indicated to the court that the same property has a value of over $600,000.
It was noted by the court that Collins, who had opposed the sale, failed to introduce evidence of the actual fair market *33 value of the property or of the existence of a willing third-party purchaser. The court stated that it was convinced further administration of the succession would be detrimental to its successors, and that it believed the sale would bring about an earlier conclusion to the administration. Finally, the trial court recognized the "unusual rancor which has marked the simultaneous administration of the two successions...."
More accusatory were a different trial judge's comments when discussing Nancy's qualification to serve as executrix in Anderson's succession. In his June 3, 1994, ruling appointing Fuller as executor of Anderson's succession, that trial judge stated:
Since her appointment on March 9, 1994, by this court as testamentary executrix of this succession, Nancy W. Baggette has completely ignored the requirements of La. C.C.P. art. 3285 relative to the sale of securities (stocks, investments) belonging to this succession with a value of $59,255.18, without first obtaining court authority.
Without first obtaining authority of this court, Nancy W. Baggette, as executrix of this succession, has paid debts of the succession. The explanation given by her for these allegedly illegal activities as testamentary executrix was that she did not know decedent had made another will. In fact, Nancy W. Baggette filed two (2) petitions in an effort to rectify her actions: a petition to ratify the sale of the securities and a petition to ratify her prior acts.
Nancy W. Baggette desires to retain her husband, Wade R. Baggette, as her attorney to represent her as executrix of this succession. Wade R. Baggette, as the executor of the successions of the late Jo Ann Fuller and the late Helen Smith Fuller, sold succession assets to his family owned corporation, Auburn Corporation. Subsequent thereto, Auburn Corporation sold a portion of these succession assets for huge profits. Auburn Corporation still retains ownership of a great portion of those assets acquired from the successions of Jo Ann Fuller and Helen Smith Fuller. The absorption of succession assets by a closely held corporation owned by Mr. and Mrs. Baggette, both of whom are bound by a high standard of fiduciary duty, causes the court great concern.
[Annie Anderson] was an heir of the late Jo Ann Fuller and Helen Smith Fuller. It is alleged that Wade R. Baggette, as executor of the successions of Jo Ann Fuller and Helen Smith Fuller, may have depleted the assets of those successions by virtue of sales to Auburn Corporation to the detriment of decedent who was an heir of both successions. The potential claim or claims of this succession against Wade R. Baggette for any possible depletion of such assets by the aforesaid sales create a conflict. Wade R. Baggette, as attorney for the executrix of this succession could not pursue any claims against himself as a result of his actions in selling assets of the successions of Jo Ann Fuller and Helen Smith Fuller.
It is obvious that Wade's conduct has raised red flags in the past.
As administrator, Wade was obligated to comply with La. C.C.P. art. 3191, which sets forth the general duties of a succession representative:
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally *34 responsible for all damages resulting from his failure so to act.
Our emphasis. A succession representative has the duty as a prudent administrator to obtain the best price reasonably obtainable in a sale of a succession asset. Scurria v. Hodge, 31,207 (La.App.2d Cir.10/30/98), 720 So.2d 460, writ denied, 99-0011 (La.3/19/99), 739 So.2d 782. See also, La. C.C.P. art. 3197, which burdens the succession representative with the duty to close the succession as soon as advisable.
In addressing the issue of prescription, the parties relied on the two-year prescriptive period set forth in La. R.S. 9:5621, which provides:
Actions against any person who has served as curator of a vacant succession or as administrator, testamentary executor, or dative testamentary executor of a succession in this state, or against the surety on his bond, arising out of any act the succession representative, as such, may have done or failed to do, are prescribed by two years, reckoning from the day of the judgment homologating the final account.
This prescription shall not be suspended or interrupted because of the incapacity of the person who might bring the action, reserving to him his recourse against his tutor or curator.
This prescription does not apply to actions for the recovery of any funds or other property misappropriated by the succession representative nor to actions for any amount not paid in accordance with the proposed payments shown on the final account.
We note that in a minute entry and order granting the exception, the trial court referred to the passage of two years since the "alleged failure to act appropriately[.]"
However, we believe that a different prescriptive period applies in this matter. We note that Fuller complained in his petition that Wade violated the fiduciary duty owed to Anderson and her heirs when serving as administrator. Actions based on breaches of fiduciary duties constitute personal actions which are subject to a liberative prescriptive period of ten years.[3] La. C.C. art. 3499; Barksdale v. Lincoln Builders, Inc., 32,857 (La.App.2d Cir.6/21/00), 764 So.2d 223, writ denied, 00-2646 (La.2/9/01), 785 So.2d 821. The acts complained of took place in 1990. Thus, Fuller's June 26, 1996, petition alleging Wade's breach of his fiduciary duty was filed timely.
Even if this court were to apply the provisions of La. R.S. 9:5621, we would reach the same conclusion. The judgment homologating the final account of Helen's succession was rendered on June 27, 1994. The judgment homologating the final account of Jo Anne's succession was rendered on July 1, 1994. Fuller filed his petition within two years of these judgments.
Wade attempts to truncate the provisions of La. R.S. 9:5621 by arguing that the two-year prescription period began running on the date when he no longer had an obligation to account or render a final account. Wade contends that in regard to Helen's succession, this would be after the Supreme Court consolidated the successions on January 12, 1990, because on that date the assets of Helen's succession were merged into Jo Anne's succession and became subject to Collins' administration. *35 In regard to Jo Anne's succession, Wade contends that because the petition for "bulk sale" of the succession assets had been filed before he became administrator on April 30, 1990, there were no assets in the succession for which he had a duty to administer and account. He argues that his only obligation was to perform the ministerial duties of implementing the bulk sales agreement. Thus, he urges that prescription as to the claims against him as administrator of Jo Anne's succession commenced on May 1, 1990, and ended on May 1, 1992.
Wade's argument flies in the face of the clear language of the statute. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. Prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished. Bustamento v. Tucker, 607 So.2d 532 (La.1992). Of two possible constructions of a prescription statute, one barring the action and one maintaining it, the statute will be read in such manner as to maintain the action. Elevating Boats, Inc. v. St. Bernard Parish, 00-3518 (La.9/5/01), 795 So.2d 1153; Lima v. Schmidt, 595 So.2d 624 (La.1992).
La. R.S. 9:5621 clearly states that the action is prescribed two years from the day of the judgment homologating the final account. It does not state that the prescriptive period commences when the administrator no longer has assets to administer. As noted above, this lawsuit was filed within two years of the judgment homologating the final accounts.
Unfortunately, it is not difficult for an unscrupulous succession representative to conceal his actions from heirs. For instance, La. C.C.P. art. 3335 provides that a copy of any account filed by a succession representative shall be served upon each heir. The final account in Jo Anne's succession was filed on June 20, 1994. Service was made on Nancy (Wade's wife) as executrix of Anderson's succession, even though Fuller had replaced her as executor of Anderson's succession earlier that month.
We additionally note that Wade incorrectly minimizes the role he played as administrator. Although Wade argues he no longer had assets to administer in Helen's succession after the consolidation was ordered in January of 1990, it was over two months later that he and Collins, as succession representatives, first jointly petitioned the court to approve the sales of succession property about which Fuller now complains. Petitioning the court for approval of a sale is much more than a simple "ministerial" duty.
Although Wade was not administrator of Jo Anne's succession at the time of the filing of the petitions for court approval of the private sales of succession assets, he was in this position on the dates of the judgments homologating the petitions. Thus, the three 1990 judgments homologating the petitions all granted to Wade, acting in his capacity as provisional administrator of Jo Anne's succession, the authority to sell succession assets. The acts of sale approved by these three judgments all listed Auburn Corporation as the buyer. The original petition in this matter referred to Wade and Nancy as being the directors and stockholders of Auburn. Thus, the sales to Auburn were tantamount to a sale by the fiduciary to himself. Such a sale must be closely scrutinized. See, Scurria v. Hodge, supra.
Finally, we note the last paragraph of La. R.S. 9:5621, which states that the two-year period does not apply to actions for the recovery of any funds or other property misappropriated by the succession representative. *36 If this is an action for the recovery of funds allegedly misappropriated by Wade, then the ten-year prescriptive period for breach of fiduciary duty actions applies. See, Succession of Granger v. Worthington, 02-0433 (La.App. 3rd Cir.10/30/02), 829 So.2d 1108, where the Third Circuit held that in instances of misappropriation by a succession administrator, the two-year period in La. R.S. 9:5621 does not apply; rather, the ten year prescriptive period in La. C.C. art. 3499 applies. See also, Succession of Moore, 97-1668 (La.App. 4th Cir.4/1/98), 737 So.2d 749, writ denied, 99-0781 (La.4/30/99), 743 So.2d 207.
The trial court was clearly wrong in granting Wade's exception of prescription. Accordingly, the judgment is reversed.

DECREE
At appellee's costs, the judgment is REVERSED.

APPLICATION FOR REHEARING
Before BROWN, C.J., WILLIAMS, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] Jo Anne's date of death has been incorrectly listed as January 10, 1984, in previous opinions by this court.
[2] Clara Tobin, Anderson's sister, died in 1985 after having executed a March 1984 will in which she left most of her estate to Wade, Nancy, and Nancy's parents as universal legatees.
[3] It is of no consequence that Fuller does not urge this prescriptive period in his assignment of error. See discussion of La. C.C.P. arts. 2129 and 2164 in Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017.