Judgment rendered May 29, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,496-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF DONNA LYNN SIMPSON TRIPP

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 10,616

Honorable Charles Glenn Fallin, Judge

* * * * *

| | |
|---|---|
| AYRES, SHELTON, WILLIAMS, BENSON, & PAINE, LLC<br>By: Jacob C. White | Counsel for Appellant,<br>Casey Arehart |
| OFFICE OF CHRISTOPHER STAHL<br>By: Christopher M. Stahl | |
| H. RUSSELL DAVIS, APLC<br>By: Hubert Russell Davis | Counsel for Appellee,<br>Jimmie Tripp |
| WEINER, WEISS, & MADISON, APC<br>By: John M. Madison, Jr.<br>      Reid Allen Jones | |

* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

**ROBINSON, J.**

Appellant, Casey Arehart ("Casey"), daughter of the decedent, Donna Tripp ("Donna"), filed a petition for damages against Jimmie Leo Tripp ("Jimmie"), surviving spouse of Donna, in his capacity as dative testamentary executor of Donna's succession, based on the diminution of value of assets of the estate, specifically the value of shares owned by Donna in ESPS, Inc. ("ESPS"), a Louisiana corporation co-owned by Jimmie and Donna as community property. Jimmie filed a peremptory exception of prescription and peremption, arguing that Casey's claims were not against Jimmie in his capacity as dative testamentary executor, but instead were derivative claims by Casey as shareholder of ESPS against Jimmie as an officer of ESPS, which would be subject to the two- and three-year prescriptive periods and the three-year peremptive period provided by La. R.S. 12:1502. The trial court sustained Jimmie's peremptory exceptions at a November 22, 2022, hearing and entered a judgment on January 10, 2023, sustaining the exceptions and dismissing Casey's petition. Casey appeals.

Concluding that Casey's claims against Jimmie for actions or inactions taken by him as executor are subject to a 10-year prescriptive period, we REVERSE the judgment in part and AFFIRM in part.

## FACTS AND PROCEDURAL HISTORY

Donna passed away on October 15, 2013. She was survived by her two daughters, Casey and Nikki Arehart ("Nikki"), and her spouse, Jimmie, who is not the father of Casey and Nikki. A petition for appointment of independent administrator was filed on April 22, 2014, by Jimmie, Casey, and Nikki. An order was entered naming Casey and Nikki as independent

co-administrators.  On June 26, 2015, Casey filed a petition for probate of Donna's last Will and testament dated August 27, 2013.  According to Jimmie's testimony, he was unaware of the existence of the 2013 Will until it was filed.  An order was entered on the same date admitting the Will to probate and appointing Casey as independent executrix of the succession.  In the 2013 Will, Donna bequeathed all of her interest in any business owned by her with Jimmie as community property to Casey, including but not limited to ESPS, such interest to include both her ownership interest and any share of profits generated by the businesses.  Casey and Nikki were also named as residual legatees.  Shortly after probate of the 2013 Will and Casey's appointment as executrix, Jimmie incorporated the company he formed, Arizona Manufacturing Company ("AMC").  This was done on June 17, 2015.

On January 6, 2017, Jimmie filed a rule to remove Casey as independent executrix on the basis that she had failed to take necessary action to close the succession and requested his own appointment as dative testamentary executor.  Casey filed an opposition to the rule, alleging that she had believed a challenge to the Will by Jimmie would need to be resolved and additional documents would be needed before completion of administration.  The trial court rendered judgment in open court on February 13, 2017, removing Casey as independent executrix, and signed a judgment on February 27, 2017.  Casey filed a motion for new trial on March 6, 2017, on the basis of discrepancies created by the February 13 ruling, including that Nikki had not ever been removed as independent administratrix.  The trial court rendered judgment in open court on June 20, 2017, dismissing Casey's motion, and signed a judgment on July 18, 2017.

On October 26, 2017, Jimmie filed a petition for appointment of dative testamentary executor, seeking his own appointment. Attached was a letter by Casey's counsel dated September 25, 2017, indicating opposition to the appointment on the basis that the estate may have claims against Jimmie, including for diversion of business from ESPS. On November 8, 2017, Casey filed an opposition to Jimmie's petition for appointment based on his alleged attempts to divert and/or deplete estate assets of ESPS. She requested the appointment of a provisional third-party administrator, or in the alternative, the appointment of Charles Arehart, Donna's previous husband and Casey's and Nikki's father, based upon language contained in the 2013 Will. Hearings on the appointment were upset and refixed multiple times, then upset and continued without date subject to refixing by the parties.

On February 1, 2019, Casey filed a motion to compel discovery responses related to AMC, as she believed clients, business, assets, and goodwill from ESPS had been shifted to AMC. On April 2, 2019, Jimmie filed an opposition to the motion to compel, arguing that AMC was his separate property because it was formed approximately 20 months following Donna's death; therefore, its financial information was not subject to discovery based on Casey's allegations. On April 29, 2019, the trial court heard the motion to compel and the competing petitions for appointment, and rendered a judgment (1) ordering the appointment of a CPA to serve as the trial court's expert to determine whether Jimmie had shifted assets from ESPS to AMC, and (2) appointing Jimmie as dative testamentary executor of the succession. Jimmie thereafter filed his executed oath and a detailed descriptive list, and was issued letters testamentary on June 17, 2019.

Jimmie and Casey filed a joint motion to appoint a CPA on July 15, 2019, agreeing to appoint Susan Whitelaw, CPA ("Whitelaw"), as the trial court's expert. Whitelaw issued her report (the "Whitelaw Report") on November 8, 2020, concluding that, among other things, Jimmie had shifted customers and goodwill from ESPS to AMC, and AMC had used ESPS assets without compensation.

Jimmie, as dative testamentary executor of the succession, filed a petition to annul the 2013 Will on June 12, 2020, and an amended petition on March 29, 2021. Casey filed a peremptory exception of no right of action on April 30, 2021, arguing that Jimmie had no justiciable interest in the annulment, stating that (1) his rights as a usufructuary under intestacy laws had terminated when he remarried in 2015, and (2) prescription had run for the probate of Donna's earlier Will executed in 2012 in which Jimmie was a legatee. Jimmie filed an opposition to the peremptory exception on June 7, 2021. Following a hearing on June 17, 2021, the trial court overruled Casey's exception. Casey sought and was granted supervisory writs from this Court, resulting in the sustaining of the peremptory exception of no right of action and the dismissal of Jimmie's action to annul the Will.

Jimmie filed a petition to file a final account and a tableau of distribution on June 3, 2021, proposing to be placed in possession of Donna's one-half interest in former community property as reimbursement for his asserted claims against the estate. Casey filed an opposition to Jimmie's petition on June 18, 2021, opposing the proposed tableau as premature on the basis of the pending Will annulment appeal and the unresolved determination regarding the shifting of value from ESPS to AMC. On April 27, 2022, Jimmie filed a motion to amend the final

4

accounting and tableau of distribution, an amended account for the period of June 17, 2019, through March 1, 2022, and a tableau of distribution. On May 5, 2022, Casey filed an opposition to the amended final account and tableau of distribution, asserting the same objections as in the response to the original proposed tableau.

On September 1, 2022, Casey filed a petition for damage, asserting claims against Jimmie *in his capacity as the dative testamentary executor of the succession* for breaches of his fiduciary duties, including shifting value from ESPS to AMC, causing ESPS to pay a personal loan and then seeking reimbursement from the estate, and not including the value of certain assets owned by ESPS in the value of the estate. The petition based part of its claim for damages on the conclusions in the Whitelaw Report. Jimmie filed a peremptory exception of prescription and peremption on October 19, 2022, arguing that the claims were not against Jimmie in his capacity as executor, but by Casey as a shareholder against Jimmie as a corporate officer of ESPS; as such, the claims were subject to the two- and three-year prescriptive periods and the three-year peremptive period provided by La. R.S. 12:1502. Casey filed an opposition to Jimmie's exceptions on November 14, 2022. Jimmie filed a reply in support of the exceptions on November 18, 2022. At a November 22, 2022, hearing, the trial court sustained Jimmie's peremptory exceptions of prescription and peremption, noting that Casey "had the right or the power, or at some point in time could have done more than she did to file a derivative action suit." The court entered a judgment on January 10, 2023, sustaining the exceptions and dismissing Casey's petition for damages with prejudice. Casey appeals the trial court's judgment dismissing her petition for damages.

**DISCUSSION**

*Standard of Review*

The trial court made a *legal* determination that Casey's claims against Jimmie for breach of his fiduciary duties as dative testamentary executor of Donna's estate were actually in the nature of derivative claims against him as an officer of ESPS; therefore, the claims would be subject to the prescriptive and peremptive periods applicable to shareholder derivative claims under La. R.S. 12:1502, rather than the general, ten-year prescriptive period for personal actions provided by La. C.C. art. 3499. The court also found that Casey had the ability to bring an action and failed to do so during the applicable prescriptive and peremptive periods.

Legal findings are subject to a *de novo* standard of review. *State v. Hunt*, 09-1589 (La. 12/01/09), 25 So. 3d 746. To the extent that any *factual* determinations are made based upon presented evidence, those would be reviewed under the manifest error standard. "If evidence is introduced at the hearing on the peremptory exception, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review." *Stevenson v. Progressive Security Insurance Company*, 19-00637 (La. 04/03/20), 341 So. 3d 1202. However, "[w]hen the pertinent facts are not in dispute and the decision involves purely legal issues, the matter is reviewed *de novo*, and the trial court's legal conclusions are not entitled to any deference." *Smith v. Acadian Ambulance Service, Inc.*, 22-626 (La. App. 3 Cir. 03/22/23), 363 So. 3d 564 (*citing Jenkins v. Kauffman*, 21-1596 (La. App. 1 Cir. 07/13/22), 344 So. 3d 689, *writ denied* 22-01242 (La. 11/8/22), 349 So. 3d 576, and *Stevenson, supra*).

6

This court finds that since the pertinent facts pertaining to the basis of the claim are not in dispute, the decision involved purely the legal issue of whether Casey's claim for damages was in the nature of a shareholder derivative claim such that the prescriptive/peremptive periods in La. R.S. 12:1502 would apply rather than La. C.C. art. 3499. The trial court did not elaborate in its ruling when prescription and/or peremption commenced, or whether prescription was suspended or interrupted for any reason.

### *Standing*

Donna's Will bequeathed all of her interest in any business owned by her with Jimmie as community property to Casey, including but not limited to ESPS, such interest to include both her ownership interest and any share of profits generated by the businesses. Although ESPS was a sole proprietorship owned by Jimmie prior to his marriage to Donna in 2009, it is undisputed that Donna owned 50% of the stock of ESPS from the time it was incorporated on June 9, 2010, and that the parties considered the company to be community property. In addition to being a particular legatee of Donna's interest in ESPS, Casey was also a residual legatee of the estate along with Nikki.

La. C.C. art. 935 provides, in part, that, "Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them." Prior to the probate of Donna's Will, Casey and Nikki would have been universal successors as Donna's heirs under intestacy. Once the Will was probated, as the particular legatee under the Will, Casey retroactively acquired ownership of Donna's shareholder interest in ESPS immediately

7

upon Donna's death. As a universal legatee, Casey also acquired ownership of any portion of the estate not otherwise disposed of by particular legacy.

Vested ownership of estate property does not necessarily equate to possessory rights or determined that a party has the authority to represent the rights and obligations of a decedent. La. C.C.P. art. 3211 states, "A succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor." In addition, La. C.C.P. art. 685 provides:

> Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or note, need not be joined as parties, whether the action is personal, real, or mixed.

However, La. C.C. art. 938 provides:

> A. Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole.

> B. If a successor exercises his rights of ownership after the qualification of a succession representative, the effect of that exercise is subordinate to the administration of the estate.

Casey and Nikki were appointed as co-independent administrators of Donna's estate on April 22, 2014. Casey was appointed as independent executrix on June 5, 2015. Shortly thereafter, on June 17, 2015, Jimmie incorporated AMC, of which he is the sole officer and shareholder. Therefore, Jimmie's alleged misdeeds that are the basis of Casey's petition for damages did not occur until just after she was appointed as the executrix. Casey was removed as executrix on February 27, 2017, approximately 21 months after her appointment and the incorporation of AMC. No other

8

succession representative was appointed for an additional 27 months until Jimmie was named as dative independent executor on May 29, 2019, with letters testamentary issued on June 17, 2019.

In her capacity as a universal successor, Casey had the authority to represent the decedent with respect to any rights and obligations of the decedent from the time of Donna's death on October 15, 2013, to the time a succession representative was appointed on April 22, 2014. However, Casey also had the authority to represent the interests of the decedent in her capacity as a succession representative from April 22, 2014, through February 27, 2017. Casey had the ability to represent *her own* ownership interests (particularly as to ESPS) as of the date of Donna's death – first as an heir, then as a residual legatee – although those interests would be subordinate to the estate administration during the time a succession representative was appointed. After Casey's removal as executrix, she maintained her authority to represent the decedent's interests as a universal successor, as well as priority for her ownership rights as a particular legatee, until Jimmie was appointed on May 29, 2019. Therefore, for the overall time period of October 15, 2013, to May 29, 2019, Casey had the authority – on behalf of the estate as the executor, or on her own behalf as a legatee – to obtain information necessary to pursue a claim, and to bring an action, including the enforcement of her rights as a shareholder of ESPS.

*Nature of Action*

ESPS, whose acronym stands for "Environmental Safety Product Solutions," built certain environmental products for the oilfield, in particular, environmental tanks that collect and dispose of waste generated by compressor skids, generators, etc. The company also sells other products

such as retaining walls, containment systems, plastic chemical tanks, and containment pans. AMC builds environmental tanks similar to those ESPS was selling, but they differ in design and size. The new AMC tanks were designed with different parts, including a different level controller and different pumps that are imported from overseas, which make the tanks less expensive. Both ESPS and AMC tanks were designed by Jimmie.

Jimmie is the sole officer of ESPS, which was a sole proprietorship prior to his marriage to Donna. ESPS was incorporated approximately one year into the marriage, and Donna was named a 50% shareholder. Jimmie is also the officer and shareholder of AMC, which was initially funded solely by his separate funds. Jimmie testified that he created AMC due to the significant decline in the oilfield business during that time and the need to design a separate product at a much lower cost so that he could maintain a profit. He also testified that he created AMC essentially to separate his business interests from Casey, since she would be inheriting Donna's ownership in the company.

In her petition for damages, Casey alleges that Jimmie has shifted value from ESPS to AMC by moving customers, failing to pay rent for certain depreciable assets owned by ESPS, and shifting goodwill. She refers to the Whitelaw Report, dated November 8, 2020, which concluded that: AMC realized approximately $263,893.52 in income from customers shifted from ESPS from 2015 through 2019; AMC owed ESPS estimated rents of $19,120 for 2015, $18,860 for 2016, and $16,821 for 2017; and the value of goodwill of approximately $43,135.44 was shifted from ESPS to AMC during the years 2020 and 2021. She also alleges that Jimmie caused ESPS to make loan payments toward a certain personal loan incurred by Jimmie

10

while also seeking reimbursements from ESPS for payments he made personally on that loan. She further claims that Jimmie has taken other steps to reduce the value of ESPS, including the failure to account for ESPS's ownership of an airplane and certain property in the Bahamas.

Casey claims that Jimmie breached his duty as executor to preserve the shares of ESPS, including by failure to assert shareholder rights. She references Jimmie's fiduciary obligations enumerated in La. C.C.P. art. 3191, in part, as follows:

> A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.

She also refers to the requirement of La. C.C.P. art. 3211 that a succession representative must enforce all obligations in favor of the succession. Casey urges that Jimmie has a fiduciary obligation to Casey as a legatee of the estate who would ultimately have a shareholder interest in ESPS, and has failed to protect her interests as such shareholder. She claims that Jimmie's actions in diminishing the value of the estate's shares of ESPS are included in his duties as executor because an executor's duty encompasses breaches that occurred prior to his appointment; therefore, his actions are subject to the longer applicable prescriptive period.

Casey refers to several cases in which succession representatives held the dual positions of executor/administrator and a corporate officer, wherein courts found that the succession representative breached his or her fiduciary duty by their acts as a corporate officer. In *Succession of Dunham*, 408 So. 2d 888 (La. 1981), the executrix was also an officer and director of a closely

11

held corporation who had obtained court authorization to sell stock owned by the estate back to the corporation. The Louisiana Supreme Court ultimately held that, pursuant to La. C.C.P. art. 3191, the decedent's children could reserve the right to seek damages against the executrix, and upheld the determination that the executrix breached her fiduciary duty in permitting the stock sale at the authorized price because the corporation received significant assets after the sale. It noted that, because the executor was active in the governance of the corporation, she should have known the corporation would receive additional assets shortly after the sale and that the sales price should have been higher.

In *Scurria v. Hodge*, 31,207 (La. App. 2 Cir. 10/30/98), 720 So. 2d 460, *writ denied*, 99-0011 (La. 3/19/99), 739 So. 2d 782, this Court held that the co-administrator of a succession who was also an officer and director of a closely held corporation breached his fiduciary duty in acquiring stock from the succession at a price far below fair market value. The Court analyzed the duties of both a succession representative and a corporate officer, and determined that a breach occurred in both capacities.

Casey also claims that caselaw supports a finding of a breach of a succession representative's duty even when the alleged acts occurred prior to appointment. She refers to *Succession of McNeal*, 50,498 (La. App. 2 Cir. 02/24/16), 188 So. 3d 1089, *writ denied*, 16-0836 (La. 6/17/16), 192 So. 3d 766, in which suit was brought against an executor for misappropriation that occurred while he was trustee of a revocable trust that was subsequently terminated. This Court found that a determination of whether there was a breach included an examination of the circumstances surrounding the management of the trust since the executor's duty encompassed any

12

previous misappropriation or breach of fiduciary duty that occurred before he became executor because of his duty to recover the succession property.

The Fifth Circuit's holding in *Succession of Theobold*, 20-68 (La. App. 5 Cir. 12/23/20), 309 So. 3d 878, was consistent with this Court in a factually similar case considering prescription claims against the executor. It held that it was of no consequence that the alleged misappropriation may have occurred prior to appointment as executor because the fiduciary duty encompassed any previous misappropriation undertaken even if it was not concealed based on his duty to recover succession property.

Jimmie argues that Casey's claims that he diverted corporate opportunities from ESPS to AMC are in the nature of a derivative action because the alleged losses would be borne by all shareholders of ESPS, not a particular shareholder(s); therefore, the action would be governed by La. R.S. 12:1502 and the specific two- and three-year prescriptive/preemptive periods would apply. He urges that the caselaw she refers to is inapplicable in this situation because the succession administrators in those cases were alleged to have committed wrongs to or with stock owned by the estate, in their capacities as administrators. He claims that the damage alleged was to ESPS, not to the succession, and that any damage to the value of the stock is an indirect result of his acts as a corporate officer.

Jimmie further urges that Casey attempts to wrongfully reclassify the claims for corporate mismanagement as a personal action so that it Will be subject the ten-year prescription. He refers to this Court's holding in *Coleman v. Querbes Co. No. 1*, 51,159 (La. App. 2 Cir. 2/15/17), 218 So. 3d 665, *writ denied*, 17-0694 (La. 6/29/17), 222 So. 3d 31, in which it refused to "recast" claims for corporate mismanagement as personal actions subject

13

to La. C.C. art. 3499, reasoning that applying the ten-year prescriptive period over the specific periods for derivative suits would effectively negate La. R.S. 12:1502.

Jimmie also refers to *Succession of Poteet*, 17-710 (La. App. 3 Cir. 1/31/18), 238 So. 3d 1020, wherein the Third Circuit held that La. R.S. 12:1502 clearly applied to allegations that a corporate officer misappropriated property belonging to the corporation, as well as to inappropriate expenditures and disbursals over a period of time. The Court specifically held that the introductory clause of La. C.C. art. 3499 has been held to be a "catch-all provision" that covers personal actions not specifically covered by any other prescriptive period such as La. R.S. 12:1502 which provides a clear prescriptive period applicable to the matter, making La. C.C. art. 3499 inapplicable.

Casey's claim for damages is clearly based on Jimmie's actions as an officer of ESPS. Her allegations regarding ESPS's corporate value concern an injury to the corporation itself and an indirect injury to a shareholder. Her petition includes specific allegations all concerning the reduction of the value of ESPS, including but not limited to, unrealized income from shifting customers and misallocated loan reimbursements. She claims that the reduction in ESPS's value reduces the value of the estate, thereby resulting in her claim falling under the purview of the Jimmie's fiduciary duty as executor to manage and preserve property and recover any misappropriated estate funds.

The 50% of ESPS shares were properly included as assets of the estate, possession of which would be transferred to Casey at the close of estate administration. Casey is entitled to receive those shares in their

14

entirety, but claims that their value was reduced since the date of Donna's death. There was no misappropriation of *estate* assets by Jimmie, either by virtue of his role as corporate officer or as the executor, because the alleged misappropriation was of the *ESPS* assets, a classic situation warranting a shareholder derivative suit.

The caselaw cited by Casey is distinguishable. In those cases, the claims for fraud and misappropriation were against an executor who had formerly acted as either a trustee or in some mandatary capacity of the decedent. The assets clearly belonged to the decedent, then to the estate upon death. Further, the court found that the actions fell directly within the statute with a longer prescriptive period. In this case, the assets involved are that of ESPS, and La. R.S. 12:1502 directly applies, whereas La. C.C. art. 3499 is merely a catch-all provision.

### La. R.S. 12:1502, Prescription vs. Peremption; Commencement

The applicable prescriptive or peremptive period for Casey's shareholder derivative action is stated in the applicable portions of La. R.S. 12:1502, as follows:

> C. ***No action for damages*** against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, ***shall be brought unless it is filed*** in a court of competent jurisdiction and proper venue ***within one year*** from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but ***in no event shall an action*** covered by the provisions of this Subsection **be brought more than three years from the date of the alleged act, omission, or neglect**.
>
> D. ***No action for damages*** against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or

for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, *shall be brought unless it is filed* in a court of competent jurisdiction and proper venue *within two years* from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but *in no event shall an action* covered by the provisions of this Subsection *be brought more than three years from the date of the alleged act or omission*.

E.      The *time limitations* provided in this Section *shall not be subject to suspension on any grounds or interruption* except by timely suit filed in a court of competent jurisdiction and proper venue.  [*Emphasis added*.]

The applicable prescriptive period for Casey's derivative action would be, at most, two years from the time she knew or should have known of Jimmie's alleged misdeeds.  However, the statute also clearly provides a peremptive period of three years from the date the misdeeds occurred.

The alleged act in Casey's petition for damages refers to Jimmie's general shifting of value from ESPS to AMC by way of moving customers, failing to pay rent for ESPS assets, shifting goodwill, misallocations of loan payments, and neglecting to include certain ESPS assets.  According to the Whitelaw Report, this overall shifting of value commenced in 2015 when AMC began to discover income from customers moved from ESPS.

Casey had the ability to obtain information regarding her claims at the onset of Jimmie's alleged actions in 2015 because she was either acting as the executrix of the estate (until February 27, 2017) or had ownership rights and priority while there was no acting succession representative (until May 29, 2019).  The first indication of her knowledge of Jimmie's alleged breaches was in her letter dated September 20, 2017, which was attached to her opposition of Jimmie's petition for appointment as dative executor, in which she stated that she suspected that ESPS's business had been diverted

16

and specifically enumerated her allegations. Casey had also taken Jimmie's deposition in June 2018 and asked questions about ESPS and AMC. She sought production of AMC records from Jimmie on February 9, 2019.

The 2017 letter provides in detail Casey's allegations against Jimmie. She states:

> [Casey has] reviewed ESPS's tax returns with a CPA, and the tax returns are improper. The Estate should have been listed as a 50% owner in ESPS for the years 2013-2016. We are also concerned that no profits have been set aside for the estate. Instead, Mr. Tripp has continuously paid himself. [*Portion omitted*.] It appears on paper that the company suddenly divested itself of business in 2015 and/or 2016. After grossing 1 million dollars in 2012, $1.4 million in 2013, $1.7 in 2014, and $870,000.00 in 2015, the company grossed a meager $116,000.00 in 2016. I strongly suspect that the business has been diverted from ESPS.

It is clear that Casey had sufficient knowledge to support her claim as evidenced by her September 2017 letter. However, we find that Jimmie's actions *should have been discovered* by Casey while she was acting as independent executor, pursuant to her fiduciary obligations imposed by La. C.C.P. art. 3191. The alleged shifting of value began in 2015 shortly after the creation of AMC and Casey was not removed until February 27, 2017. In fact, the trial court based its order removing her as executrix on the fact that she had failed to timely perform her duties as executor.

Casey had two years to bring a claim under La. R.S. 12:1502 before it prescribed, which would be February 27, 2019. She did not file her petition for damages until September 1, 2022. Therefore, a shareholder derivative action had clearly prescribed, barring the claim.

In addition to the prescriptive provisions, La. R.S. 12:1502 also *perempts* an action brought more than three years from the date of the alleged act or omission. The alleged act referred to in Casey's petition is the

shifting of value from ESPS to AMC, which began in 2015, as indicated in the Whitelaw Report. As such, the *peremptive* period in which to bring a shareholder derivative action would be at some point in 2018, clearly barring Casey's action for damages.

### *La. C.C. art. 3499, Prescription of Personal Action*

La. C.C. art. 3499 provides simply that "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." The clear peremptive language of the 12:1502 dictates that a shareholder derivative suit shall not "be brought more than three years from the date of the alleged act or omission" and that the "time limitations provided in this Section shall not be subject to suspension on any grounds or interruption."

As to the acts alleged to have been committed by Jimmie as corporate officer of ESPS prior to his appointment as executor, this Court agrees with Jimmie's argument that the specific time limits for derivative suits in La. R.S. 12:1502 trump the general period for personal actions in La. C.C. art. 3499 since a more specific statute controls over a general statute. *Burge v. State*, 10-2229 (La. 2/11/11), 54 So. 3d 1110. When two statutes are in conflict, the statute which is more specifically directed to the matter at issue must prevail as an exception to the more general statute. *Smith v. Cajun Insulation, Inc.*, 392 So. 2d 398 (La. 1980); *Esteve v. Allstate Ins. Co.*, 351 So. 2d 117 (La. 1977). The general ten-year prescription of La. C.C. art. 3499, as that article indicates, applies only in the absence of any other statutory mandate. We find *Coleman*, *supra*, to be persuasive that La. R.S. 12:1502 would effectively be negated were the ten-year prescriptive period of La. C.C. art. 3499 to apply instead.

18

In general, an executor has a duty to enforce obligations of the *estate*, such as pursuing a shareholder derivative action based on the breach of an officer's duty that affects the value of corporate shares owned by the estate. The executor would need to file that particular type of claim within the applicable prescriptive period provided in La. R.S. 12:1502. If that action had prescribed prior to an executor's appointment, there would obviously be no such duty as an executor to enforce the prescribed claim.

If a corporate officer of a company whose shares are owned by an estate breached his fiduciary duty *while also serving* as a succession representative of that estate, the executor could not sue himself; rather, his breach as an officer would be imputed to him in his capacity as executor. An administrator cannot in his own right sue himself individually. *Boone v. Boone*, 152 La. 208, 92 So. 861 (1922). However, the actions of an executor can be imputed to him as a corporate officer. In *Fuller v. Baggette*, 36,952 (La. App. 2 Cir. 5/6/03), 847 So. 2d 26, *writ denied*, 03-2076 (La. 11/7/03), 857 So. 2d 498, an executor's request to sell succession property for well below fair market value that would ultimately be purchased by a company for which he was an officer, was held to be a breach of his duty as succession representative and the ten-year prescription period applied. This Court held that the officer's sale of property was tantamount to a sale by the fiduciary himself. Notably, the original breach occurred in his capacity as executor.

If the executor had not been appointed until after he committed the breaches as the corporate officer, the officer's duty *may* still be imputed to his capacity as executor due to the fact that the executor is the proper person to bring the action against the officer, i.e., no other individual is authorized

19

to bring the action. However, relevant prescriptive/peremptive periods still apply – in this case, those in La. R.S. 12:1502 concerning shareholder derivative suits. The action was preempted three years after Jimmie's alleged breaches as corporate officer, prior to his appointment as executor. There would be no claim for fiduciary breach as succession representative without the underlying claim of a corporate officer breach, and it cannot then be "revived" solely because an executor is the same individual as the corporate officer. Once Jimmie was appointed executor by the court, he owed a fiduciary duty to the estate and any action or inaction by him resulting in damage to the estate would be subject to the 10-year prescriptive period as set forth in La. C.C. art. 3499.

For the foregoing reasons, we conclude that claims against Jimmie for actions taken by him prior to his appointment as executor are preempted because those claims are shareholder derivative claims. Any claims related to actions taken, or not taken, by Jimmie after his appointment as executor are subject to the 10-year prescriptive period under La. C.C. art. 3499 and survive the exceptions of prescriptions and peremption.

## CONCLUSION

We AFFIRM the judgment insofar as it applies to the prescription of the derivative actions. We REVERSE the portion of the judgment that dismisses Casey's claims as to Jimmie's duties as executor, fiduciary in nature, relating to his actions or inactions as executor. All costs are shared equally by the parties. This matter is remanded to the trial court for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**